UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

JAMES C. PACENZA, SR.

              Plaintiff,

-against-

IBM CORPORATION,

              Defendant.
------------------------------------------------------------

ECF CASE

COMPLAINT

ROBINSON
04 CIV. 5831

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

## INTRODUCTORY STATEMENT

This is a action for damages against defendant IBM Corporation ("Defendant" or "IBM") for its discriminatory treatment and wrongful termination of plaintiff's employment, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et. seq. ("ADA"), the Age Discrimination in Employment Act, 29 U.S.C.A. § 621, et seq. ("ADEA"), and parallel New York State and New Jersey law.

## THE PARTIES

1.    Plaintiff James Pacenza is, and was at all times relevant herein, a citizen of the United States and a resident of the Town of Montgomery, County of Orange, State of New York.

2.    Defendant IBM (hereinafter "defendant" or "IBM"), upon information and belief, is and at all times relevant herein, was a business corporation organized and existing under the laws of the State of New York, with principal offices located at Armonk, New York.

3.    Defendant is an employer within the meaning of Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et. seq., the Age Discrimination in Employment Act, 29 U.S.C.A. § 621, et seq. ("ADEA"), and corresponding New York law.

4. Upon information and belief, defendant has, at all times herein relevant, been authorized to conduct business in the states of New York.

## JURISDICTION AND VENUE ALLEGATIONS

5. This court has jurisdiction over this action under 42 U.S.C.A. § 12101 et. seq., 29 U.S.C.A. § 621, et seq., 29 U.S.C. Chap 28, and under 28 U.S.C. § 1331 and § 1343(4), and supplemental jurisdiction under New York and New Jersey law.

## FACTUAL ALLEGATIONS

*Plaintiff's Background*

6. Plaintiff resides, and have at all times relevant herein resided, in the Town of Montgomery, Orange County, New York. Plaintiff is 55 years old.

7. Plaintiff believe that he was discriminated against by IBM on the basis of a) his age and, especially, b) his psychological disabilities, and perception/record of such disability, resulting from his Vietnam War combat experiences.

8. Upon information and belief, Plaintiff was an employee of IBM for over 19 years, with an exemplary and unblemished employment record during the whole period of time of his employment.

9. Nevertheless, Plaintiff was discriminated against and terminated by IBM due to his psychological disability and perception/record thereof, notwithstanding that employee with much more severe psychological problems, in the form of drug or alcohol problems and/or addiction, are allowed treatment programs, therapy and, most certainly, "given a second chance."

10. Upon information and belief, plaintiff was wrongfully made a victim of "political correctness" regarding its perception of his psychological disability.

*Specific Facts*

11.     Upon information and belief, Plaintiff was an exemplary employee of IBM, at the East Fishkill Research Park, employed from January 23, 1984, until May 29, 2003, on which date his employment was terminated.

12.     Upon information and belief, Plaintiff met and exceeded all career challenges, including completing the Workstation Ownership program, and becoming a versatile member of each of the two departments he worked in: Raw Materials Preparation and Photolithography.

13.     Upon information and belief, plaintiff currently served as the ISO 9000/14000 representative of the Photolithography department.

14.     Upon information and belief, as an IBM employee, Plaintiff was consistently rated a 2 performer, who worked many hours of overtime in order to assist his department in meeting its production needs.

15.     Upon information and belief, an inaccurate observation made on May 28, 2003, perhaps from a mischievous or ill-intended co-worker, placed plaintiff in a false light, thereby providing defendant with a convenience pretext and unjustified and sham excuse for abruptly ending Plaintiff's IBM career.

16.     Specifically, while working at his job station, Plaintiff took a break from work, and entered a chat room on an IBM computer on which he was working.

17.     There, plaintiff entered into a private conversation, while continuing to perform his job duties.

18.     Upon information and belief, plaintiff's conduct was roughly analogous to a telephone company employee having a conversation with a pedestrian while doing outside telephone company work on telephone lines.

19. Plaintiff then ended the brief "chat room" conversation and went to the next isle to relieve another employee for lunch, forgetting to exit the website.

20. Upon information and belief, another employee came to use the computer tool Plaintiff was working on and, allegedly, saw the chat site and logged it off and then allegedly reported the site use to Plaintiff' manager.

21. Plaintiff was called and told to report to his manager's office on the way home from work.

22. Plaintiff reported to the manager's office at about 7:20 pm and was told that someone said that they saw "pornography" on a computer monitor.

23. Plaintiff stated that he did not view pornography at work, but admitted that he had visited a chat room.

24. The IBM manager, Joe Mihans, stated that the chat room conversation contained the word "blowjob" and was therefore pornography.

25. The manager stated that this was serious and that he would have to discuss this with Carla Meigel, the second level manager." Maybe we'll get you help", he told Plaintiff.

26. Plaintiff returned to work the next morning and worked through the day until 6:15 pm when he was again called to the manager's office.

27. At that time, Plaintiff was told that his job was terminated.

28. Plaintiff said, "You can't do this Joe", and the manager said, "It's already been done. I know you have a problem. We've talked about this before".

29. Plaintiff replied, "So this is how you help me with my problem by firing me? Where was the help you told me you would get me?", and the manager said, "My hands are tied".

4

30. Plaintiff asked what Carla, the second level manager, had to say, with the response being that Carla said that others had been fired for less so Plaintiff had to be fired.

31. Plaintiff asked why Carla did not talk to him that day and was told by his manager that Carla was busy all day.

32. Plaintiff was then escorted from the building.

33. Plaintiff made both a facility and corporate appeal based on discrimination, because of his problem with internet chat rooms, suggesting that if he were an alcoholic or a drug addict, he would have received help and not have been immediately fired after so many years and such a exemplary record.

34. Michelle Geiger at "Corporate level Open Door" indicated that IBM has programs for alcoholics and drug addicts but not for sex addicts (or other psychological illnesses).

35. Plaintiff tried to explain that the reason he was having problems at this time was because the war in Iraq had triggered many issues from Vietnam; that he would actively be seeking help from the US Veterans Administration in resolving his war-related illness, and that he felt he could remain the valued and contributing employee which he had always been.

36. As a matter of record, Plaintiff is a decorated Vietnam Combat veteran who received a personal Army Commendation Medal for Heroism, while defending a US Army Division headquarters on September 11, 1969, in the Republic of Vietnam.

37. Unfortunately, this and other combat experience in Vietnam left Plaintiff with Post Traumatic Stress Disorder (PTSD) for which he has sought professional help.

38. His PTSD has, through the years, been self-medicated with alcohol and, since the advent of the internet, with chat rooms.

39.     Plaintiff had, at the time of his termination with IBM, and presently, attends therapy, where he sees a psychiatrist for proper medication, and attends 12 step groups in order to control his illness.

40.     Upon information and belief, plaintiff's illness had been well controlled enough at IBM that most (if not all) of his IBM coworkers were not even aware of an illness.

41.     Plaintiff's success at IBM has been his one consistent link from the past to the future he envisioned for himself, before his life was forever changed in Vietnam.

42.     Plaintiff had, prior to Vietnam, wanted to work for IBM after graduating high school just like his other brothers, but he was drafted instead.

43.     After his experience in Vietnam, it then took plaintiff 14 years to finally have his application accepted and get the job he wanted, a job he treasured until the moment he lost it.

44.     In fact, plaintiff lost his IBM job on the same day he wrote a letter to a dead comrade, whom Plaintiff felt he should have died for, saying, "I guess I finally figured out why I lived, and you didn't. I have a wonderful wife, two great kids, and a job I love" (that letter sits for all posterity on the virtual wall under the name of George Sanchez who died on February 1,1969).

45.     Within a few hours of writing his letter/note, Plaintiff ventured into the chat room, as a brief diversion from work.

46.     Upon information and belief, people with survivor guilt punish themselves for any good in their life because they feel they do not really deserve to be living, let alone have anything good in life.

47.     Upon information and belief, plaintiff was a very good employee who had a classic wartime disability—PTSD—and who could, and would, with an understanding employer, willing to have the iterative dialog required under the ADA, remain an excellent employee.

48.     Upon information and belief, plaintiff had and has reapplied for further assistance from the VA in treating his PTSD.

**Military Combat-Related Disability**

49.     Upon information and belief, plaintiff's termination results from his superiors' or management's unfounded displeasure or discomfort regarding plaintiffs' documented psychological disability, which disability was incurred by him while serving the United States in combat during the Vietnam War.

50.     Mr. Pacenza's disability had been disclosed by him to his superiors/IBM management prior to his termination.

51.     As a Vietnam combat veteran, Mr. Pacenza saw his friend killed, and he killed the enemy, thereby experiencing guilt which has caused him the psychological difficulty which he described to IBM (but upon which he did not in any manner act out, but only engaged in private conversation).

52.     Specifically, on February 1, 1969, James' best friend was shot multiple times as he walked around a tree, in front of James. His friend, George, lay on the ground dying and calling for plaintiff to come help him. Plaintiff had to lay on the ground listening to his friend die, because he too would be shot if he went around the tree. On March 9, 1969, plaintiff was involved in a battle in which 10 men from two platoons were killed. He now visits with those men and his best friend at The Wall in Washington, D.C. On September 11, 1969, plaintiff and

7

another guard prevented a nighttime ambush of division headquarters. This was the first time plaintiff could actually see the bodies of men he had killed.

53. Upon information and belief, plaintiff has suffered from guilt related to these three incidents for over 30 years: guilt for surviving when his friends did not, and guilt for taking other human life.

**Discrimination regarding, if anything, a minor infraction**

54. Upon information and belief, Plaintiff did <u>not</u> view "pornography" on IBM's computers.

55. Upon information and belief, IBM is dealing with him (through termination and its prior perception of him) as if plaintiff had viewed pornography or worse.

56. Upon information and belief, IBM's action is based upon plaintiff's record of (psychological) disability, not misconduct based upon such disability.

57. As such, IBM's action is in violation of the federal Americans with Disabilities Act ("ADA") and parallel New York State statutory law.

58. Upon information and belief, Plaintiff was fired for the purported reason that the words "blow job" were on the computer screen of a computer he had been using.

59. Upon information and belief, there is no accusation that Plaintiff wrote or uttered such words, nor is there an accusation by IBM that any depiction of sex acts were displayed on the computer screen which plaintiff was using.

60. Upon information and belief, if Plaintiff was taking an unauthorized break in his workday, and during this break "surfed" or otherwise ventured into cyberspace and entered a "chat room", the "job offense" would be plaintiff's taking an unauthorized break.

61. Upon information and belief, IBM has provided no information that such assumptions are incorrect or disputed.

62. Upon information and belief, the reason Plaintiff was fired, rather than counseled about taking an unauthorized break, was because, in IBM management's eyes, plaintiff has an undesirable, and self-professed, record of psychological disability related to his Vietnam War combat experience.

63. Upon information and belief, under State and federal law, including the ADA, plaintiff should not have been fired on such grounds. .

64. Plaintiff is also an older employee.

65. Upon information and belief, plaintiff's termination was motivated by a combination of age and disability discrimination.

66. As such, this was classic "mixed motive" discrimination.

**Discrimination in Unfairness & Lack of "Mercy"**

67. Upon information and belief, it is also discriminatory (not to mention manifestly unfair) that Plaintiff has been shown no "mercy" by IBM, when people with other more severe psychological disabilities (alcoholism or drug addiction) or behavioral problems are routinely offered help and/or shown mercy.

68. For example, upon information and belief, a drunk employee who killed another person in a car accident was not fired.

69. Upon information and belief, nor was another employee who entered AA due to alcoholism after several DWI's.

70. Upon information and belief, two employees who had sexual intercourse on an IBM desk were not fired, but merely transferred.

71. Upon information and belief, engaging in sexual intercourse on an IBM desk is potentially more disruptive of the workplace than is a brief visit to a computer chat room resulting in words on a monitor.

72. Upon information and belief, Plaintiff was treated more harshly for what was a trivial offense than are other employees.

73. Upon information and belief, IBM affords treatment and counseling to its employees who have serious drug or alcohol addictions.

74. Upon information and belief, IBM has no program for employees with war-related illnesses, phychological or otherwise.

75. Upon information and belief, a military combat veteran, if anyone, should be afforded a "second chance," the benefit of doubt, and afforded reasonable accommodation for combat-related disability.

76. Upon information and belief, plaintiff was not afforded reasonable accommodation for his disability and record/perception thereof.

77. Upon information and belief, permitting hostility in the form of "political correctness" in terminating plaintiff's employment, based upon the perception that he is some type or form of "sex addict" is improper and unlawful discrimination under the ADA and State law, and unfair as well.

78. Upon information and belief, because plaintiff has spent a career working with IBM in a narrow field of manufacturing, and because of his age, plaintiff's prospects for the future are bleak.

79. Absent his termination, plaintiff was not far away from being able to retire from IBM.

80. In fact, plaintiff would have been eligible to retire from IBM on March 1, 2004 as he would have 20 years of service with IBM and would be 55 years old.

81. Upon information and belief, as a matter of humanity, and non-discrimination, Plaintiff should have been given a second chance.

82. Plaintiff is a long-term exemplary IBM employee who committed, at most, a minor employment infraction—personal use of an IBM computer while not on formal break.

83. Because of his self-disclosed psychological problem (resulting from his patriotic Vietnam combat experience), and combined with being an older worker, he has suffered the extremely harsh and manifestly discriminatory punishment of job termination.

84. On behalf of Plaintiff, and his wife and two children, Plaintiff requests a remedy.

85. Upon information and belief, plaintiff outperformed defendant's non-terminated employees using any and all reasonable criteria, such as qualifications, experience, dedication, longevity, effort, and ability.

86. Upon information and belief, what has distinguished plaintiff from other of defendant's employees who committed minor workplace infractions has been plaintiff's age and war-related disability and perception thereof.

87. Upon information and belief, defendant's response to plaintiff's age, his psychological condition, his record of illness/disability, and defendant's perception of plaintiff's disability, was to discriminatorily discharge plaintiff from its employ.

88. Upon information and belief, if plaintiff were younger and without disability and the perception of such, he would not have been fired.

*Damages*

89. Upon information and belief, plaintiff has not been comparably employed since the termination by defendant or, until recently, employed at all.

90. Upon information and belief, plaintiff has made diligent efforts to find replacement and comparable employment, but has been unsuccessful.

91. Upon information and belief, plaintiff earned approximately $65,000 annual salary with defendant.

*"Right to Sue" Letter*

92. Plaintiff has filed a timely charge of race discrimination with the Equal Employment Opportunity Commission and brings this action within ninety (90) days of the receipt of a Notice of Right To Sue.

### FIRST CAUSE OF ACTION—
### DISABILITY DISCRIMINATION,
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT of 1990,
### 42 U.S.C.A. § 12101 et. seq.

93. Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

94. Plaintiff's employment was terminated, in substantial part, due to his physical disability, defendant's perception that plaintiff was disabled, and plaintiff's record or disability.

95. Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

96. As a proximate result of defendants' discrimination against plaintiff on the basis of his disability and a record or perception of disability, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

97. As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation by defendants.

98. As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

99. The conduct of defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages.

100. Wherefore, plaintiff seeks relief.


**SECOND CAUSE OF ACTION – AGE DISCRIMINATION**

101. Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

102.  Upon information and belief, defendants discriminated against plaintiff on the basis of plaintiff's age, in the terms and conditions of plaintiff's employment, resulting in his wrongful termination.

103.  Plaintiff is consequently entitled to compensatory and liquated damages, together to with other authorized relief.

### THIRD CAUSE OF ACTION—
### VIOLATION OF NEW YORK STATE EXECUTIVE LAW

104.  Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

105.  Upon information and belief, in discriminating against plaintiff based upon plaintiff's physical disability and his age, defendants caused plaintiff damage, in violation of the anti-discrimination provisions of New York State law, including the N.Y.S. Human Rights Law. See, N.Y.S. Executive Law, article 15.

106.  Plaintiff therefore demands relief and damages therefor.

### FIFTH CAUSE OF ACTION—
### VIOLATION OF ERISA

107.  Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

108.  Upon information and belief, defendant's termination of plaintiff's employment was, in part, intended to deprive plaintiff of benefits protected under the provisions of the Employee Retirement Income Security Act, 29 U.S.C.A. § 1140 et seq.("ERISA").

109.  Upon information and belief, defendant's termination of plaintiff's employment included, as a motivation, eliminating an older worker with accruing pension entitlements.

110. Upon information and belief, by firing plaintiff, defendant IBM could "cut off" his accruing pension rights and entitlements.

111. Upon information and belief, defendant unlawfully "discharge[d], .. suspend[ed] or otherwise discriminate[d] against a participant [plaintiff] for exercising [a] right for which he is entitled under [ERISA]." See, 29 U.S.C. § 1140.

112. As a proximate result of defendant's actions against plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation (including 401-k contributions), and other employment benefits, plus the expenses and attorney's fees incurred herein.

113. Under ERISA, defendant also owed plaintiff, as a welfare plan participant, a fiduciary duty regarding the provision of benefits under such plan.

Upon information and belief, defendant violated this fiduciary duty. See, 29 U.S.C. § 1102(a)(1) and § 1104(a)(1).

By its conduct, plaintiff was injured thereby.

WHEREFORE, plaintiff prays that this Court grant judgment to him containing the following relief:

    a. An award of plaintiff's actual damages in an amount not less than $3,000,000 for loss of wages, benefits, and promotional opportunities, including an award of back pay for all lost salary, and front pay compensating plaintiff for loss of future salary and benefits;

    b. An award of damages in an amount not less than $2,000,000 to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

    c. An award of punitive damages;

    d. An order enjoining defendants from engaging in the wrongful practices alleged herein and to provide plaintiff with a reasonable accommodation;

e.  An award of liquidated damages on plaintiff's age discrimination claim;

f.  An award of reasonable attorneys' fees and the costs of this action; and

g.  Such other and further relief as this Court may deem just and proper.

**Jury Demand**

Plaintiff requests trial by jury in this action.

Dated: Stony Point, New York
July 26, 2004

_____
MICHAEL D. DIEDERICH, JR.
*Attorney for Plaintiff*   (MD 2097)
361 Route 210
Stony Point, NY 10980
(845) 942-0795